IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KIM DAHL,<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLES F. DAHL, M.D., P.C. DEFINED BENEFIT PENSION TRUST, CHARLES F. DAHL individually, ROSEMOND V. BLAKELOCK, KELLY PETERSON, and DOES 1-5,<br><br>    Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:11-cv-949-TC |

  Plaintiff Kim Dahl's claims against Defendant Kelly Peterson arise out of his conduct as guardian ad litem during the divorce proceedings between Ms. Dahl and her former husband, Defendant Charles F. Dahl, M.D. Specifically, Ms. Dahl alleges that Mr. Peterson violated 18 U.S.C. § 2511(c) (the Wiretap Act) when he disclosed in open court the contents of a phone conversation between Ms. Dahl and one of her minor children that Dr. Dahl had recorded in violation of a judge's orders. She also claims that Mr. Peterson discussed the contents of that phone conversation with one of her minor children. At a hearing on February 16, 2012, the court allowed Ms. Dahl to conduct limited discovery about the context in which Mr. Peterson made the disclosures. The purpose of this discovery was to determine whether Mr. Peterson was acting within the scope of his employment as guardian ad litem. Mr. Peterson has now filed a Motion for Summary Judgment on Ms. Dahl's claims (Dkt. No. 45), arguing that his actions did not

exceed the bounds of his authority as guardian ad litem and that he is therefore protected by the doctrines of quasi-judicial immunity and qualified immunity. Because the court agrees with Mr. Peterson, his motion is GRANTED.

## BACKGROUND[1]

In 2006, Mr. Peterson was appointed by Judge James Taylor of the Fourth Judicial District Court of Utah to represent the best interests of the Dahl children in their parent's divorce proceedings. On July 18, 2007, Judge Taylor ordered that any visitation between Ms. Dahl and her children be supervised. Ms. Dahl was also "restrained from unmonitored telephone communications with the minor children." (Order 5-6, July 18, 2007, Ex. B to Def.'s Mem., Dkt. No. 46.) Then, on October 7, 2009, Judge Taylor revised these restrictions. He found that the arrangement as it then stood was harmful to the best interests of the children. He stated that "supervised visitation would be immediately terminated." (Tr. of Hearing 1764-67, Oct. 7, 2009, Ex. 22 to Pl.'s Mem., Dkt. No. 57.) He also made the following statements about telephone restrictions: "[T]he children should be able to call either parent, except that whichever parent they're physically with at the time may impose reasonable time limit restraints." (Id.)

On October 12, 2009, Dr. Dahl recorded a telephone call between Ms. Dahl and her daughter, C.D. Dr. Dahl provided a copy of the recording and a transcript that he had made to Mr. Peterson. Sometime before November 3, 2009, Mr. Peterson had an interview with C.D. during which he played her part of this recording. He claims that he wanted to authenticate that it was C.D.'s voice and her mother's voice on the recording. (Peterson Dep. 99, 102.) Mr.

---

[1] Unless otherwise noted, the facts are taken from the memoranda submitted by both parties.

Peterson also contends that his actions were taken in response to Judge Taylor's request that Mr. Peterson provide a report to the court on how the Dahl children were responding to the lifting of the supervised restrictions. (Id. at 102-03.)

On November 3, 2009, Mr. Peterson referred to the recording in a court hearing at which he presented his report. Judge Taylor then reminded the parties that it was unlawful for a third party to record a telephone conversation without the consent of the two people involved. (Tr. of Hearing 2552-53, Nov. 3, 2009, Ex. 23 to Pl.'s Mem., Dkt. No. 57.) A few months later, on February 10, 2010, Judge Taylor removed Mr. Peterson as guardian ad litem. Judge Taylor's ruling was prompted by Mr. Peterson's disclosure that his brother, Andrew Peterson, had formed a law firm with Rosemond Blakelock, who was counsel for Dr. Dahl during the divorce proceedings. (Tr. of Hearing 8, Feb. 10, 2010, Ex. 28 to Pl.'s Mem., Dkt. No. 57.) Judge Taylor found that a sufficient conflict of interest existed to prevent Mr. Peterson from continuing to serve as guardian ad litem. (Id. at 4-8.)

## ANALYSIS

Mr. Peterson argues that the claims against him should be dismissed because he is entitled to both quasi-judicial immunity and qualified immunity.

Quasi-Judicial Immunity

Quasi-judicial immunity is a form of "absolute" immunity that attaches "when a public official's role is 'functionally comparable' to that of a judge." Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir. 2003). Although quasi-judicial absolute immunity is not listed as a specific statutory exception in the Wiretap Act, the court concludes that quasi-judicial immunity is nevertheless a defense to Wiretap Act liability given how well-rooted this doctrine is in federal

jurisprudence. See Forrester v. White, 484 U.S. 219, 225-26 (1988) (setting forth history of judicial immunity and stating that "judges have long enjoyed a comparatively sweeping form of immunity" and that the Supreme Court has "not been quick to find that federal legislation was meant to diminish the traditional common-law protections extended to the judicial process"); see also Babb v. Eagleton, 614 F. Supp. 2d 1232, 1237-38 (N.D. Ok. 2008) (discussing other cases addressing this issue).

An official is entitled to quasi-judicial immunity if (1) her role is functionally comparable to that of a judge, or (2) her acts are integrally related to an ongoing judicial proceeding. See Mitchell v. Fishbein, 377 F.3d 157, 172 (2d Cir. 2004) (citing Butz v. Economou, 438 U.S. 478, 513 (1978)); see also Babb, 614 F. Supp. 2d at 1240 (granting immunity to a Parenting Coordinator because Oklahoma statute demonstrated that Parenting Coordinators served in a role that was functionally comparable to that of a judge and because Parenting Coordinator's actions were integrally related to a judicial proceeding). Both parties concede that Utah courts have extended quasi-judicial immunity to guardians ad litem. See, e.g., Gallacher v. Kisner, 2009 WL 2058432, at * 7 (D. Utah July 15, 2009) ("A guardian ad litem is entitled to absolute quasi-judicial immunity from suit for conduct within the scope of his or her duties as guardian ad litem."). But absolute immunity cannot attach to a guardian ad litem if his actions are "clearly and completely outside the scope of [his] jurisdiction." Demoran v. Witt, 781 F.2d 155, 158 (9th Cir. 1986); see also Turney v. O'Toole, 898 F.2d 1470, 1474 (10th Cir. 1990) (stating that "absolute immunity extend[s] only to acts prescribed by [the court's] order" in case addressing the immunity afforded to an official charged with executing a facially valid court order). In addition, the Supreme Court has stated that "immunity is justified and defined by the functions it

protects and serves, not by the person to whom it attaches." Forrester, 484 U.S. at 227.

    Mr. Peterson argues that the acts of which Ms. Dahl complains arose out of the performance of Mr. Peterson's statutory duties to represent the interests of the children. In his deposition, he maintains that the references he made to the allegedly illegal recording were disclosed in the course of preparing and delivering a report for Judge Taylor. (Peterson Dep. 102-03.) Having carefully read the transcript of the November 3, 2009 hearing at which Mr. Peterson referred to the recording, the court is satisfied that Mr. Peterson's actions were integrally related to a judicial proceeding. Judge Taylor had asked Mr. Peterson to deliver a report to the court of how the minor children were responding to unsupervised visitation with their mother. (Id. at 107.) Mr. Peterson's references to the recording occurred first while he was interviewing Ms. Dahl's daughter in order to prepare that evaluation, and second in open court when he was delivering that evaluation to the judge as requested. Both references were made in the course of Mr. Peterson's duties as guardian ad litem.

    Ms. Dahl argues that, even if Mr. Peterson's use of the recording took place during a judicial proceeding, he relinquished any claim to absolute immunity by abandoning his role as guardian ad litem and acting as an advocate for Dr. Dahl. Ms. Dahl cites numerous instances where she believes that Mr. Peterson was not acting in the best interests of the children and she emphasizes that Mr. Peterson was ultimately removed from his position as guardian ad litem due to a conflict of interest when his brother began working with Dr. Dahl's counsel, Ms. Blakelock. The court has carefully reviewed each of Ms. Dahl's allegations and finds that they do not suffice to strip Mr. Peterson of his immunity. The majority of Ms. Dahl's allegations amount to disagreements with Mr. Peterson about which actions he should have taken and which

recommendations he should have made during the divorce proceedings. But these decisions concerning the best interests of the children are the province of the state trial court. If this court were to review those decisions, no guardian ad litem would be safe from lawsuit. And while the court recognizes the possible conflict of interest between Mr. Peterson and Ms. Blakelock, there is no evidence that there was an undue delay before Mr. Peterson disclosed this issue and was removed from the case. This allegation is insufficient to raise a genuine issue about whether Mr. Peterson's conduct was within the scope of his employment.

Mr. Peterson was acting at the direct request of Judge Taylor to report on the status of the children when he referenced the telephone call at issue. He was clearly within the scope of his employment and is therefore entitled to absolute quasi-judicial immunity. As a result, the court need not determine whether Mr. Peterson's references to the recorded call violated the Wiretap Act.

<u>Qualified Immunity</u>

Because the court finds that Mr. Peterson is entitled to absolute immunity, it need not decide whether he is also entitled to qualified immunity.

ORDER

For the foregoing reasons, Mr. Peterson's Motion for Summary Judgment (Dkt. No. 45) is GRANTED. His motion to strike certain statements of fact and exhibits in Ms. Dahl's opposition memorandum (Dkt. No. 64) is DENIED AS MOOT.

SO ORDERED this 3rd day of August, 2012.

                                      BY THE COURT:

                                      _____
                                      TENA CAMPBELL
                                      United States District Judge