IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KIM DAHL,<br><br>             Plaintiff,<br><br>vs.<br><br>CHARLES F. DAHL., M.D., P.C. DEFINED BENEFIT PENSION TRUST, et al.,<br><br>             Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:11-CV-949-TC |

Plaintiff Kim Dahl has brought numerous state and federal claims against her former husband, Charles F. Dahl, M.D., as well as the retirement trust account for which Dr. Dahl is the administrator and Dr. Dahl's divorce attorney, Rosemond Blakelock (collectively, Defendants). The federal causes of action include a claim under the Employment Retirement Income Security Act of 1974 (ERISA) and a claim asserting violation of the federal wiretapping act.[1] The Defendants have filed motions for summary judgment[2] on all of Ms. Dahl's claims.

For the reasons set forth below, the court holds that (1) it does not have subject matter jurisdiction over Ms. Dahl's ERISA claim because the retirement trust account is not subject to ERISA; and (2) the recorded telephone conversations between Ms. Dahl and her minor children do not violate the federal wiretapping act because Dr. Dahl's recording of the calls falls within

---

[1]Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520.

[2]Docket Nos. 74 and 83.

the exception for vicarious consent. Accordingly, the Defendants' motions for summary judgment are granted on the federal claims. The court declines to exercise supplemental jurisdiction over the remaining state law claims.

## BACKGROUND

Charles F. Dahl and Kim Dahl were married in 1992 and have two minor children. Beginning in 2006, Ms. Dahl and Dr. Dahl were embroiled in a highly-contested divorce and child custody dispute. Attorney Rosemond Blakelock represented Dr. Dahl during the divorce proceedings. After more than three years of litigation and a lengthy trial, the Dahls were divorced on July 20, 2010. Dr. Dahl is the custodial parent of the two children.

Dr. Dahl is a physician and the sole owner of the medical practice named "Charles F. Dahl, M.D. a Professional Corporation" (the "practice" or "Medical Practice"). As part of his business, Dr. Dahl set up the Charles F. Dahl, M.D. P.C. Defined Benefit Pension Trust (the Trust).

Before the marital relationship disintegrated, Ms. Dahl worked as a manager of Dr. Dahl's practice for the years 2002 and 2003. During those years, she received a salary, which is reflected in a number of documents, including W-2 statements reporting her annual income for tax purposes. But there is no evidence that Ms. Dahl worked for or was compensated by Dr. Dahl's Medical Practice after 2006 (according to the Dahls' 2003, 2004, 2005, and 2006 joint tax returns—the only tax returns submitted as evidence by Ms. Dahl—Ms. Dahl's occupation was listed as a manager), much less after the two were divorced in 2010.[3]

---

[3]Ms. Dahl cites to her January 5, 2012 letter notifying the Medical Practice's attorneys that if she had not already been terminated, she resigned effective immediately. She also cites to

2

At the same time Dr. Dahl filed his petition for divorce, he filed an ex parte motion for a temporary restraining order that included a request for temporary custody of the children. He presented an affidavit detailing abusive behavior by Ms. Dahl toward the children. (See Record page 0060 in Ex. C to Docket No. 84.) The state court granted the ex parte motion for a TRO on October 24, 2006. Soon after, the parties reached an agreement (see November 2, 2006 Stipulation, Ex. C to Docket No. 84) giving Dr. Dahl temporary custody of the children and allowing Ms. Dahl supervised visitation. A *guardian ad litem* was appointed to supervise Ms. Dahl's visits with the children. On the basis of the Stipulation, the court ordered, among other things, that "[n]either party shall discuss the litigation or custody proceedings with the minor children and neither party shall disparage or speak negatively of the other in the presence of the minor children." (Nov. 7, 2006 Order on Stipulation ¶ 5, Ex. C to Docket No. 84.)

In June 2007, Dr. Dahl filed papers with the state court, alleging (with an affidavit in support) that Ms. Dahl was violating the supervision order. In his affidavit, he complained that Ms. Dahl had contacted the children at times and places where she was not permitted by the court's order.

In July 2007, the court issued a restraining order, finding "that both of the minor children, as well as Dr. Charles Dahl, will suffer permanent and irreparable harm if the Restraining Order, as requested by the Petitioner, is not issued in this matter." (July 18, 2007 Restraining Order (attached as Ex. H to Docket No. 84) at 3, ¶ 8.) Among other very specific restrictions on Ms. Dahl's contact with Dr. Dahl and the minor children, the court restrained Ms. Dahl "from

---

legal conclusions made by Dr. Dahl in an affidavit and in briefs to the court as to her employment status. Neither of these is competent evidence of Ms. Dahl's dates of employment.

unmonitored telephone communications with the minor children. All telephone communications between the minor children and [Kim Dahl] may be monitored by [Dr. Dahl]." (Id. at 6, ¶ 3.)

On November 19, 2007, a telephone conversation between Kim Dahl and her adolescent daughter was recorded by Dr. Dahl. During the conversation, Kim Dahl talked about the divorce litigation and her attempt to get custody of the children, gave suggestions on how to behave during the supervised visits, and related the emotional toll the dispute was having on her.

On November 27, 2007, Attorney Blakelock, on behalf of Dr. Dahl, submitted a transcript of that telephone conversation to the state court. Based on the conversation, the state court issued order restraining Ms. Dahl "from having any type of telephone contact with the minor children." (Nov. 27, 2007 Ex Parte Restraining Order (Ex. J to Docket No. 84) at 1.)

At a December 3, 2007 hearing, Ms. Dahl objected to the recording, but the state court commissioner left the restraining order in place. In a minute entry, the state court said that it "cannot find[] that the telephone conversations being recorded were [surreptitious]. The mother can only have telephone visits if they are supervised by ACAFS." (Dec. 3, 2007 Minutes (Ex. K to Docket No. 84) at 2.)

In May 2009, the state court held another hearing on the issue of custody and parent visitation rights, after which it entered findings and conclusions of law, including the following:

12. The Court finds that the behavior of the Respondent [Kim Dahl] in this case, has been her own worst enemy. The Court finds that its rulings cannot change a parent's outlook, but the Court is obligated to make observations and findings.

13. The Court finds that there is a tone, there is a tenor that comes through in the testimony of the Respondent, that comes through in the Respondent's behavior. The Court finds the Respondent appears to regard herself as a martyr and finds that she addresses difficulties and challenges with histrionics.

    14.      The Court finds that the Respondent has an amazing lack of insight into how her personal reactions are coloring her view of what is happening and when events occur, that the Respondent's reaction from the Court's view is wrong.

. . .

    18.      . . . [A]t this point in time, there is no basis in the evidence to change the prior orders of the court.

May 27, 2009 Findings & Order (Ex. L to Docket No. 84) (internal citations omitted).)

During trial, on October 7, 2009, the court set "statutory visitation without supervision. Regarding the telephone, the children should be able to call either parent at any time but the custodial parent determines reasonable time for the telephone conversations to take place and to last." (Oct. 7, 2009 Minutes from Bench Trial (Ex. M to Docket No. 84) at 1.)

On October 12, 2009, Dr. Dahl recorded a telephone conversation between Ms. Dahl and her adolescent daughter. It included disturbing statements made by Kim Dahl to her daughter. (See Tr. of Oct. 12, 2009 telephone conversation (Ex. O to Docket No. 84).) For instance, during the conversation, Ms. Dahl repeatedly coaxed her daughter to take prescription pain killers, graphically discussed a miscarriage with the daughter, told her daughter that she is the spirit of Kim Dahl's dead baby, and told her daughter that something was wrong with the girl's "biorhythm" while at the same time saying that a heart attack usually occurred in part due to out-of-sync biorhythms. (See id.)

On October 23, 2009, Attorney Blakelock, on behalf of Dr. Dahl, filed a transcript of the intercepted telephone conversation between Kim Dahl and her daughter.

During trial on November 3, 2009, the state court orally told the parties not to record

phone conversations.[4]  (See Tr. of Nov. 3, 2009 (Ex. P to Docket No. 84) at 2552-2553.)  But the court's written orders remained in place.

The state court eventually determined that custody would remain with Dr. Dahl.  The state court also issued an order (a Qualified Domestic Relations Order, or QDRO) requiring Dr. Dahl to distribute fifty-percent of the Trust balance to Ms. Dahl as part of the divorce settlement.  On July 20, 2010, the state court issued the divorce decree.

Since then, the acrimonious proceedings originating in divorce court have made their way into federal court.

## ANALYSIS

Ms. Dahl now alleges violation of the federal wiretapping law and violation of fiduciary duties under ERISA for the alleged failure to disburse the distribution amount (more than $750,000) to Ms. Dahl as ordered by the state court.[5]  The Defendants challenge all of her claims in two motions for summary judgment.

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

---

[4] The state court told the parties not to break the law and record telephone conversations without consent.  The court's statement was dictum because the court was offering advice in a context where the issue was not being litigated.  Reliance on that statement by the parties is not persuasive.

[5] Apparently, some time after Ms. Dahl filed her federal complaint, Dr. Dahl made a significant distribution from the retirement account to Ms. Dahl.  Instead of fighting over the right to distribution and the right to obtain records accounting for the amount due to Ms. Dahl, Ms. Dahl now disputes whether the amount of the distribution she received was a full and correct payment.  The court need not address that issue because ERISA does not apply to the transaction in dispute and the court declines to exercise supplemental jurisdiction over state-law-based claims.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252. See also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

**ERISA Claim**

Plaintiff contends that the Employment Retirement Income Security Act of 1974 (ERISA) gives her a cause of action against the Defendants concerning the distribution of money from the Charles F. Dahl, M.D. P.C. Defined Benefit Pension Trust (the Trust), which was set up by the business of Dr. Dahl, Charles F. Dahl, M.D., P.C (the "Medical Practice").

ERISA governs employee benefit plans and creates rights for employees who are participants in an ERISA plan. But the Trust does not fall within the definition of an ERISA plan. The controlling regulations expressly provide that the term "employee benefit plan"

> shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan[.]

29 C.F.R. § 2510.3-3(b) (emphasis added).

Ms. Dahl contends that she was an employee of the Medical Practice. Although Ms. Dahl

7

received compensation and W-2 forms from the Medical Practice for a couple of years, she was not, as a matter of law, an "employee" entitled to protection by ERISA. The regulations established a clear rule:

> <u>An individual and his or her spouse</u> shall <u>not</u> be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is <u>wholly owned by the individual</u> or by the individual and his or her spouse[.]

29 C.F.R. § 2510.3-3(c) (emphasis added). There is no dispute that Dr. Dahl and Ms. Dahl were the only two employees of the Medical Practice and were married at the time. There is also no dispute that the Medical Practice was, and continues to be, wholly owned by Dr. Dahl. Although by other definitions they may have been employees, they were not "ERISA employees." In essence, they are not counted. Accordingly, under ERISA regulations, the Medical Practice had no employees, and so the Trust is not an employee benefit plan. The regulation expressly excludes them—and the Trust—from ERISA coverage.

In the alternative, Ms. Dahl contends that she was an employee at the time she and Dr. Dahl were divorced and so the regulation does not apply. But there is no competent, admissible evidence in the record that she was employed by the Medical Practice for any years other than 2002 and 2003. Her self-serving "resignation" and earlier statements by Dr. Dahl about her status as an employee do not establish that she was, as a matter of fact or law, an employee, much less an employee for purposes of ERISA, at the time the Dahls were divorced in 2010.[6]

---

[6] The court does not find persuasive Ms. Dahl's legal argument that, on the day of the divorce, the Trust became a qualified ERISA employee benefit plan because it no longer fell within the scope of the disqualifying regulation. She cites to no law supporting her conclusion (the case of <u>In re Metz</u>, 225 B.R. 173, 176-77 (BAP 9th Cir. 1998), is distinguishable for the reasons set forth by the Defendants in Docket No. 150 at pp. 5-7). Even so, there is no evidence in the record that she worked for or was compensated by the Medical Practice after 2006.

For these reasons, the court finds that it has no subject matter jurisdiction over Ms. Dahl's First Cause of Action.

**<u>Wiretapping Claim</u>**

The federal wiretapping law provides a civil cause of action against any person who "intentionally intercepts . . . any wire, oral, or electronic communication." 18 U.S.C. §§ 2511(1)(a), § 2520. The statute also prohibits a person from intentionally disclosing to another the contents of that communication or intentionally using the content of the illegally-obtained communication. The statute, however, contains a "consent exception":

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or whether one of the parties to the communication has given prior <u>consent</u> to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(c) (emphasis added).

Here, the Defendants contend that the defense of "vicarious consent"—an outgrowth of the consent exception quoted above—applies here and bars Ms. Dahl's claim. Citing to <u>Thompson v. Dulaney</u>, 838 F. Supp. 1535 (D. Utah 1993), and <u>Pollock v. Pollock</u>, 154 F.3d 601 (6th Cir. 1998), the Defendants specifically contend that Dr. Dahl, as guardian of his minor daughter, had "a good faith basis that [was] objectively reasonable for believing that it [was] necessary to consent on behalf of [his] minor child to the taping of the phone conversations," and that such "vicarious consent [was] permissible in order for the guardian to fulfill [his] statutory mandate to act in the best interests of the children." <u>Dulaney</u>, 838 F. Supp. at 1544.

The issue of vicarious consent has arisen in the context of child custody disputes such as

this one. The approach in Dulaney was adopted by the Sixth Circuit in Pollock v. Pollock, the facts of which are very similar to those now before the court.

In Pollock, the father of a minor daughter sued the daughter's mother and her attorneys for alleged violations of the federal wiretapping statute. The defendant Sandra Pollock tape-recorded conversations between her ex-husband and their minor daughter in a purported effort to protect her daughter from emotional abuse by the defendant's ex-husband. In the mother's affidavit, she said that her ex-husband was very upset about losing custody of the children during divorce proceedings and that she "'believed that Courtney was being subject to emotional and psychological pressure by Samuel and Samuel's wife, Laura, whereby Samuel was trying to get Courtney to do whatever she could to convince [Sandra] to let Courtney primarily live with Samuel.'" Pollock, 154 F.3d at 604 (quoting record). The mother insisted that she was concerned for her fourteen-year-old daughter and so she placed a tape recorder on her extension telephone to monitor the conversations. She maintained that "her only motivation in doing this was 'concern for her child's well being.'" Id. During the monitoring, the mother heard a conversation that disturbed her and so she reported it to her attorney who then reported the conversation to the Crimes Against Children Unit (CACU) in that state. The CACU disclosed the contents of the conversation to the judge who had presided over the couple's divorce and custody disputes.

The Pollock court expressly adopted vicarious consent as a safe haven from liability under the federal wiretapping statute. Citing to authority in the Tenth Circuit (Thompson v.

Dulaney, and Newcomb v. Ingle[7]) as well as in other circuits, the Pollock court held that "a parent, motivated by concern for the welfare of his or her child, can 'vicariously consent' to tape-recording the calls of a minor child, when the child has not consented to the recording." Id. at 606. The test is whether the consenting parent has demonstrated "a good faith, objectively reasonable basis for believing such consent was necessary for the welfare of the child." Pollock, 154 F.3d at 610.

The courts adopting this doctrine have been careful to limit its application to certain circumstances. For example, the Pollock court stressed the following:

> [W]hile this doctrine should not be interpreted as permitting parents to tape any conversation involving their child simply by invoking the magic words: "I was doing it in his/her best interest," there are situations, such as verbal, emotional, or sexual abuse by the other parent, that make such a doctrine necessary to protect the child from harm. It is clear that this is especially true in the case of children who are very young. It would be problematic, however, for the Court to attempt to limit the application of the doctrine to children of a certain age, as not all children develop emotionally and intellectually on the same timetable, and we decline to do so.

154 F.3d at 610. The Thompson v. Dulaney court articulated a similar caveat:

> The Court wishes to emphasize a point that should already be apparent. The holding in this case is very narrow and limited to the particular facts of this case. It is by no means intended to establish a sweeping precedent regarding vicarious

---

[7]In Newcomb v. Ingle, 944 F.2d 1534 (10th Cir. 1991), the Tenth Circuit held that a custodial parent's wiretapping of a minor child's telephone conversations from a telephone within the house without the consent of the minor child fell within the "extension exception," 18 U.S.C. § 2510(5)(a)(i), to liability under the wiretapping statute. This approach has also been adopted by the Second and Seventh Circuits. See Janecka v. Franklin, 843 F.2d 110 (2d Cir. 1988); Anonymous v. Anonymous, 558 F.2d 677 (2d Cir. 1977); Scheib v. Grant, 22 F.3d 149 (7th Cir. 1994); but see Pollock, 154 F.3d at 607 (noting that the Sixth Circuit has declined to extend the exemption to the domestic arena). Arguably, the "extension exception" would also exempt Dr. Dahl's recording of Ms. Dahl's conversations with their daughter. The parties, however, do not raise the issue, so the court will not address it.

> consent under any and all circumstances. The holding of this case is clearly driven by the fact that this case involves two minor children whose relationship with their mother/guardian was allegedly being undermined by their father. Under these limited circumstances, the Court concludes that vicarious consent is permissible.

838 F. Supp. at 1544 n.8.

Here, the court believes that similar circumstances (concern about emotional abuse of a minor child, not just articulated by the father but noted by the state court) exist to which the vicarious consent doctrine applies. The court disagrees with Ms. Dahl's contention that the facts in this case do not demonstrate that Dr. Dahl had an objectively reasonable basis for believing his vicarious consent was necessary for his daughter's well-being. The record (particularly numerous court findings of fact and restraining orders discussed above in the fact section) shows that Dr. Dahl's concern was objectively reasonable.[8]

The court finds that Dr. Dahl, who was (and is) the custodial parent, properly gave vicarious consent on behalf of his minor daughter to the recording of Kim Dahl's telephone conversations with their daughter on the home telephone line. Accordingly, he is not liable under 18 U.S.C. § 2511. And, because the conversations were not illegally intercepted, the claims against Dr. Dahl's attorney, Rosemond Blakelock, fail as well.

---

[8]The parties extensively discuss whether the state court permitted recording of the calls and whether such permission was withdrawn at some point during the proceedings, either in a written order or minute entry, or through statements from the bench. What the state court ordered, although persuasive, is not controlling here. The court also notes that, based on its holding, it does not reach the other defenses raised by Defendants—statute of limitations, collateral estoppel, good faith reliance on a court order, and judicial proceeding privilege.

## ORDER

For the foregoing reasons, the court holds as follows:

1. The court lacks subject matter jurisdiction over the Plaintiff's ERISA claim.

2. The Defendants are entitled to summary judgment on the Plaintiff's federal wiretapping claims.

3. The court, under 28 U.S.C. § 1367, declines to exercise supplemental jurisdiction over the Plaintiff's state law claims.

4. The Clerk of the Court is directed to close this case.

SO ORDERED this 19th day of February, 2013.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge